**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

AVCO CORPORATION,

Plaintiff,

v.

VERONICA SALTZ TURNER,

Defendant.

**CIVIL ACTION NO. _____**

*ELECTRONICALLY FILED*

## COMPLAINT

Plaintiff Avco Corporation ("Avco" or "Plaintiff") files this Complaint against Defendant Veronica Saltz Turner ("Turner" or "Defendant") seeking a declaratory judgment, disgorgement and injunctive relief.

## PRELIMINARY STATEMENT

Avco brings this action to prevent its former attorney, Defendant Turner, from continuing to breach fiduciary duties that she owes to her former client, Avco. The heart of this controversy concerns Turner's decision to represent certain plaintiffs against Avco on matters that are substantially related to her past representation of Avco. She represented Avco for more than a decade in connection with more than 20 lawsuits involving allegations of defects in aircraft engines, their ignition systems and fuel delivery systems, or the components thereof designed and/or manufactured by Avco. More than that, however, Turner described herself as Avco's go-to lawyer in Pennsylvania and New Jersey for nearly *all* matters – acting not only as defense counsel in products liability lawsuits, but also directly advising the company's management and in-house counsel on IP litigation, employment disputes, and

commercial disputes. In the course of that relationship, Turner was regularly provided with access to trade secrets and other confidential information about the company's business and operations, and she participated in its decision-making about how to manage and approach key decisions in litigation.  As lead counsel on a number of matters in Pennsylvania and New Jersey, she became familiar with and, in fact, helped to develop many of Avco's litigation strategies and worked closely with AVCO's experts as they developed their opinions in disputes involving allegations of defective aircraft engines, their ignition and fuel delivery systems, and the various components thereof. She also had ongoing relationships with individuals who currently serve as experts on behalf of Avco and has been intimately exposed to information related to both their processes and methods in testing piston engine ignition systems, fuel delivery systems and their components.

That relationship ended acrimoniously in 2018. And today, Turner is now representing plaintiffs asserting claims *against* Avco, in conjunction with one of the plaintiffs' law firms she previously opposed on Avco's behalf. Turner is now attacking the methods of experts she previously defended, and who continue to serve as expert witnesses for Avco. In doing so, she has confirmed that *she* took lead in drafting motions to exclude defense expert opinions and that she has drawn on her "experience" and knowledge regarding the industry and claims and defenses at issue. But Defendant's knowledge of Avco, its products, and third-party accessories used with its products – including components involved in controlling the proper mixture of air to fuel in a piston engine, such as carburetors and turbochargers (the latter of which is the focus of plaintiffs' experts in on-going litigation) – was gained at Avco's expense, as part of an attorney-client relationship. Further, it is reasonable to believe that Turner could

not act as plaintiffs' counsel without taking advantage of – or even sharing – extensive confidential information, learned only in her role as Avco's attorney, with the plaintiffs' counsel with whom she is now aligned.

Both the common law of Pennsylvania and Rule of Professional Conduct 1.9 prohibit such egregious breach of her continuing obligations to Avco. Turner must not be permitted to continue to profit off of the trust Avco placed in her, and should be enjoined from acting as counsel for, or otherwise directly or indirectly providing services to, any plaintiffs or their attorneys who assert claims against Avco based upon alleged defects in Avco's piston engines, including allegations related to subsystems, components or other aspects of those engines that Turner handled as counsel for Avco.

## JURISDICTION AND VENUE

1.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds the sum of $75,000 exclusive of interest and costs, and involves citizens of different states.

2.     Venue lies in this Court pursuant to 28 U.S.C. § 1391(b) because the Defendant resides in this judicial district, a substantial part of the events or alleged omissions giving rise to the claim occurred in this district and the fiduciary relationship between Avco and Turner arose in this district.

## THE PARTIES

3.     Plaintiff Avco Corporation is a corporation organized and existing under the laws of the State of Delaware and has its principal place of business in Texas. As set forth more fully below, Avco's unincorporated operating division, Lycoming Engines, has a facility

in Williamsport, Pennsylvania where it has manufactured, *inter alia*, piston engines for general aviation aircraft since 1929.

4.     Defendant Veronica Saltz Turner ("Turner") is a citizen of the Commonwealth of Pennsylvania, believed to be domiciled in Phoenixville, Pennsylvania. As set forth more fully below, Turner is an attorney licensed to practice law in the Commonwealth of Pennsylvania since 1988. Additionally, from at least 2005 to mid-2018, Turner acted as counsel for Avco in numerous products liability, intellectual property, employment disputes and other commercial disputes. Many of the products liability suits were filed by the Wolk Law Firm – with whom she is now aligned – in which that firm now represents plaintiffs in lawsuits alleging that they suffered injuries in airplane and helicopter accidents that were supposedly caused by purported defects in Avco piston engines.

## FACTUAL BACKGROUND

### A.     Background History about Avco.

5.     Since 1929, Avco has manufactured, among other products, general aviation engines at its facility in Williamsport, Pennsylvania where it employs approximately 400 people. It designs and builds engines for use in small airplanes and helicopters.

6.     By the time the company celebrated its 75th anniversary as Avco Corporation in 2004, it had produced more than 300,000 aircraft piston engines. Today, Avco is the largest manufacturer of piston engines for general aviation in the world. It is a wholly-owned subsidiary of Textron Inc.

**B.** **The Wolk Law Firm's Litigation History Against Avco.**

7.      The Wolk Law Firm (the "Wolk Firm") is a Philadelphia firm which represents only plaintiffs in personal injury and wrongful death actions arising from airplane and helicopter accidents. The Wolk Firm markets itself as "the nation's premier air crash litigation firm." As is more fully set forth herein, attorneys with the Wolk Firm, or its named partner's predecessor firm, have sued Avco for products liability claims arising in connection with airplane and helicopter crashes involving Avco piston engines more than any other law firm in the United States over the last 30 years.

8.      Avco estimates that since 2006 the Wolk Firm has sued Avco at least 18 times and that it has had at least five to eight active claims involving the Wolk Firm in any given year over the last twenty years.

9.      Since at least 1997, attorneys at the Wolk Firm or its predecessor firm have litigated claims against Avco more than two dozen times in Pennsylvania state and federal courts alone. The claims arose from accidents in which plaintiffs alleged some defect in the design of Avco's engines.

10.     The Wolk Firm has also filed numerous lawsuits in other jurisdictions in the U.S. against Avco claiming that Avco's engines were defective and caused serious injuries and/or deaths.

11.     In each claim handled by the Wolk Firm, plaintiffs allege one or more defects in the design of Avco's engine that purportedly caused each accident, leading to significant personal injury or death. The suits brought by the Wolk Firm often involve allegations of a loss of engine power, which require investigation and expert evaluation of nearly every portion

of the engine, including the ignition system, fuel delivery system and components and third-party accessories that control the required mixture of air and fuel. Other actions brought by the Wolk Firm have raised allegations about defects in the engine airframe integration.

12.    The lawsuits are usually hotly contested, involve significant amounts of discovery which includes exchange of confidential and proprietary Avco information pursuant to a protective order, and engagement of multiple experts relating principally to the design, development, testing and operation of Avco's engines and trials.

13.    The Wolk Firm often uses the same expert witnesses from case-to-case to support its clients' claims about alleged defects in the Avco engine designs and that the alleged defects caused each accident. Similarly, Avco often uses expert witnesses across multiple actions to assist in defending claims brought against the company, whether by the Wolk Firm or other firms.

14.    As of the date of the filing of this Complaint, the Wolk Firm is counsel of record in at least 10 pending actions, in nine states, representing numerous plaintiffs with personal injury or wrongful death claims against Avco arising from eight general aviation accidents.

### C.    The *Torres* Lawsuits.

15.    The pending claims by Wolk Firm clients against Avco include suits arising from a May 17, 2015 crash of a four-person private aircraft, with a Lycoming engine, outside Laughlin, Arizona, in which three passengers were killed and the pilot – Robert Torres – was injured. That accident shall hereinafter be referred to as the "*Torres* Accident."

16.    The Wolk Firm (with local counsel where required) filed four separate actions, making essentially the same allegations, against Avco arising from the *Torres* Accident, in

6

Arizona, California, Delaware and New Jersey. The *Torres* plaintiffs allege that defects in the turbocharger in the *Torres* aircraft caused the "fuel/air mixture delivered to the engine to be improper."

17.     In the action pending in Arizona ("*Torres* Arizona"), Avco brought a motion to dismiss for lack of personal jurisdiction, which was granted by the trial court.

18.      The Wolk Firm with assistance from its local Arizona counsel filed an appeal from that order in an effort to bring Avco back into the *Torres* Arizona suit. That appeal is still pending, and the Wolk Firm is diligently attempting to have Avco reinstated as a defendant in *Torres* Arizona.

19.     The action filed in New Jersey ("*Torres* New Jersey") was dismissed, but the other two actions against Avco arising from the *Torres* Accident remain pending in California and Delaware. Those actions involve the same claims and essentially the same allegations against Avco that were asserted in *Torres* Arizona.

20.     Meanwhile, the Wolk Firm has continued to litigate claims against other defendants in Arizona, and has retained experts from its standard list of experts. Some of those experts have previously offered opinions against Avco in other matters. Presumably those experts will also support the *Torres* plaintiffs' claims against Avco in Arizona if its dismissal is reversed on appeal, or in one or more of the other actions still pending against Avco in California and Delaware.

### D.       Turner's Representation of Avco in Claims Brought By the Wolk Firm.

21.     In selecting counsel for any type of litigation – whether products liability defense, intellectual property, employment or other commercial disputes – Avco seeks to

develop long-term relationships with qualified counsel. Following retention, Avco trains counsel about its products and approach to litigation and other legal disputes. Generally speaking, the attorney engaged by Avco will continue to represent it on an ongoing basis.

22.     Starting at least as early as 2005, Turner was engaged to represent Avco and became its "go-to" regional counsel in Pennsylvania. Turner handled not only products liability suits, but also litigation over intellectual property, employment and other commercial disputes. In all of these matters, she worked hand-in-hand with Avco's and its insurer's in-house counsel. She also regularly provided direct advice and guidance to Avco's management team about how to handle litigation involving alleged defects in Avco's piston engines, including how to deal with particular plaintiffs' counsel.

23.     Over the course of her years representing Avco, Turner handled the defense of numerous aviation personal injury and wrongful death claims against Avco.

24.     The claims handled by Turner, as Avco's counsel, have covered a broad range of possible alleged defects or other failures identified by plaintiffs, including alleged loss of engine power, requiring investigation and expert evaluation of nearly every component and accessory of the engine. Often these investigations relate to the alleged defects in the delivery of fuel/air mixture.

25.     Other matters that Turner handled for Avco have involved allegations about alleged defects in how Avco engines are affected by airframe engine integration.

26.     Each aviation accident for which Turner advised Avco involved, as an overarching question, whether there existed any identifiable cause of the accident, including causes related to weather, maintenance, and/or pilot error. Such an analysis required

8

examination of every aspect of an accident, including the engine. As counsel, Turner was required to determine whether any particular system, subsystem, component or third-party accessory can fail, and did fail, in a manner that could cause an alleged power loss. Indeed, since 2005, Turner has been counsel of record for Avco in at least the products liability matters listed on Exhibit 1 attached hereto.

27.     Turner not only filed entries of appearance for Avco in the above-mentioned matters, she also provided legal advice and guidance for numerous other claims involving alleged loss of power in engines that were resolved before filing or for which other counsel appeared in court.

28.     As shown on Exhibit 1, attorneys from the Wolk Firm entered appearances of record as plaintiffs' counsel in at least eight matters involving Turner. The Wolk Firm has also been counsel of record for products liability lawsuits against Avco in numerous jurisdictions across the United States over the past 20 years.

29.     With respect to the matters listed on Exhibit 1, Turner's responsibilities as counsel for Avco included access to investigation materials and assessments of potential nonconformances in various components or third-party accessories of the Avco engines at issue in any given suit, including turbochargers (which is at issue in the *Torres* actions) or other parts affecting or affected by the air/fuel mixture. In connection with her defense of Avco, Turner was exposed to all of the various aspects of Avco's design, development and operation of its engines, including but not limited to systems, subsystems and subcomponents and accessories of every type.

30.     She also was provided an in-depth education about the company's quality control and product support systems for identifying and addressing any concerns related to Avco's engines, either as part of FAA processes or in the context of the company's internal processes.

31.     In the course of her representation of Avco, Turner was also given access to extensive information about the company's trade secrets and other confidential information about all aspects of Avco's engines, including but not limited to integration of third-party designed turbocharger systems.

32.     She participated in decision-making about what information was or was not relevant to defending claims alleging specific defects in Avco engines, including but not limited to allegations of defects purportedly affecting the proper air-to-fuel mix, and the strategy for how to protect that information either by objecting to discovery requests or seeking protective orders in litigation.

33.     She also received company-sponsored training on Avco's engine designs and products.

34.     Turner participated with Avco's and its insurer's in-house counsel in key decision-making about how to assess expert capabilities, strengths and weaknesses and which experts to retain for any specific matter, both as part of the initial investigations (including wreckage inspection) and as part of litigation after claims were filed.

35.     Turner also was responsible for working directly with the experts as they conducted their own investigations, formulated hypotheses and tested their conclusions about any alleged power loss, engine defects, or issues with airframe-engine integration. In addition,

Turner was responsible for coordinating Avco's response to any opinions offered by plaintiffs' experts about the same issues.

36.     As part of this, Turner was involved in the decisions about which experts to retain as testifying experts and which experts to use only as consulting experts, and whose opinions would remain confidential and protected by the work product doctrine in any given matter. In that respect, she was privy to privileged information and opinions developed for litigation about, *inter alia*, the engines, air/fuel mixtures and the like.

37.     Turner also worked with Avco's and its insurer's in-house counsel, and with the experts, to prepare the experts for depositions and to testify on direct and cross-examination at trial on any and all of these aspects of Avco's piston engines.

38.     Turner also worked with the experts, as well as Avco's and its insurer's in-house counsel, to formulate and carry out the company's strategy for opposing motions challenging the Avco experts' qualifications and admissibility of their opinions about Avco's engines, including but not limited to opinions about issues relating to air/fuel mixture.

39.     Avco often works with the same experts across multiple matters.

40.     Turner's work in evaluating, selecting, developing and working with experts to formulate opinions included such services in connection with claims alleging power loss from defects in how the piston engines ensured a proper mixture of air and fuel (including via turbochargers).

41.     Several experts with whom Turner worked as Avco's counsel are still active in Avco matters, including matters brought by the Wolk Firm.

11

42.     For instance, during her time as a defense attorney for Avco, Turner worked with Randall J. Knuteson, an expert with decades of experience in aircraft engine maintenance and manufacturing who specializes in aviation accident investigation and reconstruction. Mr. Knuteson continues to serve as an Avco expert, as well as an expert for other aviation defendants – including a co-defendant in *Torres* Arizona. As is more fully set forth below, Turner is now working with the Wolk Firm in connection with motions to undermine the credibility of Knuteson, if not preclude him from testifying as an expert.

43.     Turner was also involved with the strategy – both with Avco's and its insurer's in-house counsel, but also with Avco's experts – for how to challenge the admissibility of plaintiffs' experts' opinions (including but not limited to the experts routinely retained by the Wolk Firm), not only in any single matter but across multiple matters, including matters alleging power loss from defects in how the piston engines ensured a proper mixture of air and fuel.

44.     For instance, Turner provided such services in connection with prior matters where the Wolk Firm retained three experts – Mark Seader, Colin Sommer and A.J. Fielder – who have also been retained in the *Torres* Arizona action.

45.     As defense counsel, Turner also worked with Avco's and its insurer's in-house counsel to formulate and carry out strategy for trials, appeals and settlement negotiations with plaintiffs' counsel. In this role, Turner became privy to confidential information, not shared outside the company, about the company's business planning and concerns; its assessment of the risks and benefits of trial in particular venues in light of the makeup of a potential jury pool; how to handle settlement discussions with particular plaintiffs' attorneys; how litigation

and potential liabilities for claims affect decisions about when or for how much to settle claims; and under what circumstances the company should be willing to proceed to trial. Turner provided advice to the company, and was intimately involved in strategizing about how to handle claims brought by the Wolk Firm.

### E.    Turner's Decision to Terminate Her Representation of Avco.

46.    In 2016 and into 2017, Avco's and its insurer's in-house counsel noted a significant decline in the quality of Turner's work for the company, during which time she changed law firms several times.

47.    Significantly, Avco became concerned in late 2016 and into 2017 about the level of attention Turner was able to provide to three matters filed against it by the Wolk Firm that she handled on Avco's behalf. Accordingly, in early 2017, Avco and its insurer made the decision to transfer some matters to different counsel.

48.    In October 2017, Turner again changed firms. Not long after, in early November 2017, Avco and its insurer's in-house counsel determined that another outside attorney, with experience representing Avco, should assume the role as lead trial counsel for a number of cases filed by the Wolk Firm that had imminent trial dates. Avco asked that Turner remain involved with those matters as second-chair.

49.    Within a few days, however, Turner informed Avco's in-house counsel by letter dated November 13, 2017 that she was terminating the attorney/client relationship with Avco.

50.    By mid-2018, Turner had withdrawn as counsel for Avco and no longer provided any legal services to Avco or any related entity. The relationship ended acrimoniously.

13

### F.   Turner's Appearance as Co-Counsel with the Wolk Firm for Plaintiffs in the *Torres* Arizona Case.

51.   As stated in Paragraph 16 above, the Wolk Firm (with associated local counsel where required) has filed four separate actions against Avco (and other defendants) in four different jurisdictions arising from the *Torres* Accident.

52.   At the time of the *Torres* Accident and the commencement of litigation against Avco, Turner was still representing Avco in other matters filed by the Wolk Firm.

53.   The *Torres* plaintiffs alleged and still allege that the *Torres* Accident resulted from a loss of engine power. Their experts opine that defects in the turbocharger in the *Torres* aircraft caused the "fuel/air mixture delivered to the engine to be improper."

54.   Though Avco has been dismissed from the *Torres* Arizona suit, plaintiffs have appealed that dismissal in an effort to continue to litigate claims against Avco in Arizona.

55.   Meanwhile, the *Torres* Arizona plaintiffs have continued to litigate their claims against other defendants in that action. A trial date has been set for January 2021.

56.   On June 26, 2020, for the first time Turner surfaced as additional plaintiffs' counsel in connection with the *Torres* Accident.

57.   More specifically, on that day – days before argument on motions to exclude the opinions of experts retained by the other defendants – the *Torres* Arizona plaintiffs filed a motion with the Arizona court asking that Turner be "temporarily" admitted *pro hac vice* as additional plaintiffs' counsel so that she could present argument on plaintiffs' *Daubert* motions.

A true and accurate copy of that Motion (the "*Pro Hac Vice* Motion") is attached hereto as Exhibit 2.[1]

58.     Significantly, Randall Knuteson is one of the defense experts, retained by another defendant, whose methods have been challenged by the *Torres* plaintiffs and the Wolk Firm. Mr. Knuteson (like other experts in the case) offers opinion regarding the turbocharger portion of the aircraft engine.

59.     As stated above in Paragraph 42, Mr. Knuteson is an expert previously retained by Avco, through Turner, to assist with investigations and litigation. Turner has worked extensively with Mr. Knuteson on accident investigations and accident and other expert reports, opposed motions to exclude his opinions, and presented his testimony at depositions, hearings and trials. Further, during her time as an Avco attorney, Turner handled other matters in which plaintiffs alleged defects in the turbocharger portion of an Avco engine.

60.     Upon learning of the *Pro Hac Vice* Motion, Avco filed an Objection to Turner's appearance as plaintiffs' counsel even though Avco (currently) had been dismissed for lack of personal jurisdiction. A true and accurate copy of the Objection is attached hereto as Exhibit 3.

---

[1] The attachments to the *Pro Hac Vice* Motion indicate that Turner signed the application required by the State Bar of Arizona on June 19, but that the Wolk Firm wrote a check for the required fee for her *pro hac vice* application on May 7, 2020. *See id.* at Exhibit 1 thereto. The *Pro Hac Vice* Motion stated that plaintiffs would supplement the Motion – presumably to see full *pro hac vice* admission – once the State Bar issued the required receipt acknowledging payment of the admission fee. As of the date of the filing of this Complaint, that supplement has not been filed.

61.     Without addressing Avco's Objection, the Arizona court permitted Turner to "temporarily" appear *pro hac vice* to represent the *Torres* Arizona plaintiffs at oral argument on the *Daubert* Motions on July 1, 2020.

62.     Avco cannot submit to the personal jurisdiction of the Arizona court to further challenge Turner's admission in that matter.

63.     In any event, the *Torres* plaintiffs and the Wolk Firm (a) still continue to pursue the appeal in Arizona to bring Avco back into that lawsuit and (b) still assert claims against Avco arising from the same accident in three other jurisdictions.

64.     During oral argument, Turner stated on the record that she had prepared the plaintiffs' *Daubert* motions:

```
11          THE COURT:  Okay.  I have -- I have page 23 in front
12  of me.  I was hoping to zero in on it.  But if you don't have
13  it, that's fine.
14          MS. TURNER:  Well, I can get it for you if you need
15  me to.  But you know, I have to tell you honestly, I prepared
16  the motions.  And I'm, like, OCD when it comes to making sure
```

…

```
3           So what did Mr. Wartman rely on that to support it?
4   And my answer is based on, and trust me, I've read these
5   actual reports numerous times, including in preparing these
6   motions, and I couldn't find the basis for his being able to
7   make those statements.
```

*See* Exhibit 4, Transcript of July 1, 2020 Oral Argument at 27:11 – 16 and 41:3-7.

65.     In fact, the Wolk Firm filed a number of *Daubert* motions seeking to exclude defendants' experts for various reasons.

66.     Turner also stated at the oral argument that in strategizing about how to attack a defense expert's opinions, she drew upon her decades of experience:

```
2          And the problem that I had with Mr. Stimpson's
3    report is it was one that really lacked, and -- and trust me,
4    I'm going on over 31 years of experience, what I -- what I
5    felt about his report is that it was very scaled down.  I
6    don't know if he wrote it or someone else wrote it.
```

*Id.* at 36:2-6.

67.     Turner also presented oral argument extolling the qualifications of Colin Sommer, a metallurgy expert favored by the Wolk Firm who was used for other matters in which Turner represented Avco. *Id.* at 81:21 – 82:22.

68.     The Arizona court subsequently issued written rulings on most of the issues raised by the parties' *Daubert* Motions, and reserved ruling on limited issues until after an evidentiary hearing where testimony could be taken from certain witnesses – including Randall Knuteson, with whom Turner had previously worked extensively as Avco defense counsel.

69.     That evidentiary hearing was scheduled for July 21 and 22, 2020. In advance of the hearing, counsel for Avco contacted the Arizona court to confirm that the trial judge was aware of Avco's Objection to Turner's admission as plaintiffs' counsel.

70.     However, the Arizona court did not comment on the Objection and permitted Turner to appear at and participate in the evidentiary hearings.

71.     Turner appeared and participated in the evidentiary hearings on July 21, and 22, 2020. On July 21, 2020 she cross-examined Randall Knuteson (an expert for a co-defendant in that matter, with whom, as discussed in more detail above, she had previously worked as an

Avco expert) about, *inter alia*, his experience in evaluating piston engines and his methods for conducting simulation testing.

72.     Turner also cross-examined another expert, John Jackson, regarding the bases for his conclusion that the damage to the Avco piston engine involved in the *Torres* Accident indicated that pilot error in mis-managing the fuel/air mixture caused that accident.

73.     As noted in Paragraph 43 above, Turner's past representation of Avco frequently involved air/fuel mixture issues, as well as the impact on the Avco piston images from anything that affected that mixture.

## G.     Turner's Continuing Fiduciary Duties to Her Former Client.

74.     On information and belief, Turner and the Wolk Firm intend for her to continue to participate in the claims arising from the *Torres* Accident, whether in Arizona (if the trial court's personal jurisdiction ruling is reversed) or another jurisdiction.

75.     It is reasonable to believe that Turner is also assisting the Wolk Firm in other cases in which Avco is a party defendant and will share information with the Wolk Firm that she obtained as counsel for Avco when defending the company against claims (whether brought by the Wolk Firm or other attorneys) about engine power loss resulting from some defect affecting the "fuel/air mixture."

76.     The common law of Pennsylvania, and the Rules of Professional Conduct, require Turner to maintain the confidentiality of all information she learned about Avco during the course of her past representations even after the termination of the attorney/client relationship.

18

77.     The common law of Pennsylvania and Rule of Professional Conduct 1.9 also prohibit Turner from representing another client on a matter that has a "substantial relationship" to her past representation of Avco.

78.     A "substantial relationship" exists if information that might have been disclosed to Turner in her past representations of Avco could be relevant to or possibly detrimental to Avco in defending itself in other matters.

79.     Turner is currently representing plaintiffs in the *Torres* Arizona action, on claims arising from an accident which occurred while Turner was still representing Avco and that plaintiffs allege was caused by an engine power loss resulting from an "improper" "fuel/air mixture."

80.     Those same plaintiffs seek on appeal to reverse a dismissal of Avco on personal jurisdiction and – as a backstop in case they lose that appeal – have filed actions in three other jurisdictions, two of which are still pending.

81.     Turner represented Avco for more than a decade in numerous matters arising from aviation accidents that allegedly were caused by engine power loss resulting from one or more supposed defects in Avco engine designs relating to the systems responsible for ensuring a proper mix of air-to-fuel – most of which were brought by the Wolk Firm and involve a number of the same experts (defense and plaintiffs) currently involved in the *Torres* Arizona suit.

82.     During those past representations, Turner and Avco's representatives (both its own and its insurer's in-house counsel, and non-lawyer employees) communicated about

particular information that is or might be pertinent to Turner's current representations, or to any other claims that have been or may be brought from other accidents.

83.   Alternatively, Turner's representation of Avco in products liability claims handled by her involved confidential information that Avco and Turner discussed during the course of her relationship with the company.

84.   Further, given Turner's willingness to represent the *Torres* plaintiffs in a matter materially adverse to Avco, involving the same or substantially similar issues from her prior representations, Avco reasonably believes that Turner has used or will use confidential, proprietary or privileged information for claims relating to alleged defects in the ignition systems, magnetos, tappets, valves, exhausts, propeller or crankshaft systems, or airframe-engine integration to further develop her relationship with the Wolk Firm or to represent other plaintiffs in claims materially adverse to Avco.

85.   Accordingly, Avco seeks injunctive and other relief prohibiting Turner from representing, advising or otherwise assisting directly or indirectly – either as counsel of record or behind the scenes – any parties, including but not limited to the *Torres* plaintiffs, asserting (a) claims of engine power loss arising from anything affecting the air/fuel mixture, including but not limited to alleged defects in Avco piston engines' ignition systems, fuel delivery systems, magnetos, tappets, valves, exhausts, propeller or crankshaft systems, or airframe-engine integration, or (b) any other issue substantially similar to or related to her past representation of Avco.

20

## COUNT I
## (BREACH OF FIDUCIARY DUTY)

86.     Avco incorporates the allegations of ¶¶ 1 - 85 by reference as if fully set forth herein.

87.     Turner owed and owes a fiduciary duty to Avco, her former client. More specifically, as an attorney she owes undivided loyalty and is prohibited from engaging in conflicts of interest for matters that are substantially related to her past representation of Avco.

88.     During the course of Turner's prior representations of Avco, the company disclosed to her its confidences which could be relevant or possibly detrimental to Avco in its defense of any claims brought against it in which plaintiffs, assert (a) claims of engine power loss arising from anything affecting the fuel/air mixture, including but not limited to alleged defects in Avco piston engines' ignition systems, fuel delivery systems, magnetos, tappets, valves, exhausts, propeller or crankshaft systems, or airframe-engine integration, or (b) any other issue substantially similar to or related to her past representation of Avco.

89.     Avco has a right to be secure in the confidentiality of everything it discussed with her when she served as its counsel.

90.     Any representation, legal advice or other assistance by Turner of any plaintiff, including but not limited to the *Torres* plaintiffs, in claims alleging injuries from engine power loss arising from anything affecting the fuel/air mixture, including but not limited to alleged defects in Avco piston engines' ignition systems, fuel delivery systems, magnetos, tappets, valves, exhausts, propellers or crankshafts, or airframe-engine integration is substantially related to Turner's past representations of Avco.

91. As a result of Turner's actions in representing such plaintiffs, Avco has been and will continue to be damaged.

WHEREFORE, Avco requests that this Court enter judgment in its favor and against Turner, awarding disgorgement, compensatory damages, prejudgment interest and whatever further and additional relief the Court deems just and equitable

## COUNT II
## (DECLARATORY JUDGMENT)

92. Avco incorporates the allegations of ¶¶ 1 - 91 by reference as if fully set forth herein.

93. An actual controversy exists within the jurisdiction of this Court between Avco and Turner regarding their respective legal rights and obligations relating to Turner's past representation of Avco and her current and future representation of personal injury or wrongful death plaintiffs in matters against Avco.

94. Avco respectfully contends that the matter is appropriate for declaratory relief from the Court finding that Turner may not represent such plaintiffs in claims against Avco.

95. Avco requests that this Court exercise its authority vested by 28 U.S.C. §§ 2201 et seq. to resolve these matters through entry of a declaratory judgment that, *inter alia*, Turner is prohibited from providing any representation, counsel or legal services in any matter to any party materially adverse to Avco in matters in which the plaintiffs allege (a) claims of engine power loss arising from anything affecting the fuel/air mixture, including but not limited to alleged defects in Avco piston engines' ignition systems, magnetos, tappets, valves, exhausts, propellers or crankshafts, or airframe-engine integration, or (b) any other issue substantial similar or related to Turner's past representation of Avco.

22

WHEREFORE, Avco requests that this Court enter judgment in its favor and against Turner granting the requested declaratory judgment, and granting whatever further and additional relief the Court deems just and equitable.

## COUNT III
## (INJUNCTIVE RELIEF)

96.     Avco incorporates the allegations of ¶¶ 1 – 95 by reference as if fully set forth herein.

97.     In the absence of injunctive relief, Avco will suffer imminent and irreparable harm for which it will have no adequate remedy at law.

98.     The risk of irreparable harm to Avco is compounded by the nature of Turner's relationship with her current clients and her co-counsel, precluding Avco from the ability to monitor and control the use of its confidential information.

99.     Such harm cannot be adequately compensated by money damages.

100.    The risk of harm to Avco if injunctive relief is denied outweighs any potential harm to Turner if such relief is granted.

101.    Therefore, Avco requests the entry of an injunction requiring Turner to cease and desist all efforts to counsel, advise, represent or provide legal services to any person or persons materially adverse to Avco in matters in which the plaintiffs allege (a) claims of engine power loss arising from anything affecting the fuel/air mixture, including but not limited to alleged defects in Avco piston engines' ignition systems, magnetos, tappets, valves, exhausts, propeller or crankshaft systems, or airframe-engine integration, or (b) any other issue substantially related or similar to Turner's past representation of Avco, and to return (or certify

to the destruction of) all information (hard-copy, electronic or otherwise) pertaining to Avco and/or its designs or products.

102.    Avco is entitled to injunctive relief in order to prevent such immediate and irreparable harm and enforce its rights.

WHEREFORE, Avco requests that this Court enter judgment in its favor and against Turner granting the requested injunctive relief and granting whatever further and additional relief the Court deems just and equitable.

Dated: August 20, 2020                     Respectfully submitted,

**BLANK ROME LLP**

By: *s/ James T. Smith*
James T. Smith (Pa. Id. No. 39933)
Rebecca D. Ward (Pa. Id. No. 79547)
Heidi G. Crikelair (Pa. Id. No. 323898)
One Logan Square
130 North 18th Street
Philadelphia, PA 19103
Telephone:    (215) 569-5500
Facsimile:    (215) 569-5555

*Attorneys for Plaintiff Avco Corporation*